| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Kelly Larson,

    Plaintiff,

vs.

Marketplace Home Mortgage, LLC,

    Defendant.

Civil No.:

**SUMMONS**

**THIS SUMMONS IS DIRECTED TO MARKETPLACE HOME MORTGAGE, LLC.**

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

    HALUNEN & ASSOCIATES
    1650 IDS Center
    Minneapolis, MN  55402
    612-605-4098

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS**

**EXHIBIT A**

**SUMMONS.** If you do not Answer with 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to context the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated this 8th day of August, 2012

HALUNEN & ASSOCIATES

_____
Clayton D. Halunen, #219721
Barbara J. Felt, #0228564
Ross D. Staheim, #0392475
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*ATTORNEYS FOR PLAINTIFF*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. §549.211 to the party against whom the allegations in this pleading are asserted.

Dated this 8th day of August, 2012.

_____
Ross D. Staheim

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Court File No.: _____

Kelly Larson,

      Plaintiff,

v.

Marketplace Home Mortgage, LLC,

      Defendant.

**COMPLAINT AND JURY DEMAND**

Kelly Larson ("Plaintiff"), for her Complaint against Marketplace Home Mortgage, LLC ("Defendant"), states and alleges as follows:

## PARTIES

1. Plaintiff is resident of the City of Eden Prairie, County of Hennepin, State of Minnesota.

2. Defendant is a business with its principal location in the City of Edina, County of Hennepin, State of Minnesota. Defendant is incorporated according to the laws of the State of Minnesota.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked as violations occurred in the State of Minnesota and involve state, federal, and common law.

5. Venue is appropriate because Defendant transacts a substantial amount of business in the State of Minnesota and a substantial amount of the facts giving rise to this action occurred within the borders of the State of Minnesota, County of Hennepin.

## MINNESOTA WHISTLEBLOWER ACT FACTS

1

6.  Plaintiff was an Underwriter employed by Defendant from August 2008 until her termination on June 15, 2012, at Defendant's Corporate Headquarters in Edina, Minnesota.

7.  In or around March 2012, Plaintiff underwrote a file for Anthony Orenge ("Orenge"), Senior Mortgage Consultant, at Defendant. Joseph Ongaki ("Ongaki") and Mr. Bonji ("Bonji") were potential borrowers on the loan application.[1] Plaintiff ran the numbers and denied their March application because Bonji was obligated on two rental leases at other properties and had too much debt. Ongaki could not qualify for the loan on his own. After learning of the application's denial, Orenge repeatedly called Plaintiff and made excuses for the borrowers and arguments for the loan's approval. After Plaintiff articulated her position, she considered the matter closed.

8.  On May 29, 2012, Plaintiff received a similar loan application from the same borrowers. Plaintiff immediately became suspicious. First, she searched the file for the two rental leases they were obligated on, which caused their March loan application to be denied. Those leases were nowhere to be found. Plaintiff called Jim Wasieleski ("Wasieleski"), Loan Processor, to inquire. Wasieleski told Plaintiff that he was specifically told by Orenge not to include the two properties in the loan application. Plaintiff asked why. Wasieleski replied that he was simply told not to and that was the extent of it. Plaintiff then said she was suspending the loan until all the documentation was received and put in the file. After their conversation, Plaintiff notified Wasieleski and Orenge of the file's suspension. Plaintiff was upset because if someone else had assigned the file, they would have not known about the undisclosed debt and would have approved the loan, exposing Defendant to liability.

---

[1] Plaintiff cannot recall Mr. Bonji's first name and is guessing on the spelling of his last name.

2

9. On June 5, 2012 Plaintiff received an email from Wasieleski, which informed Plaintiff that Orenge decided to cancel the Ongaki file because he was going to broker it. Plaintiff understands that "brokering," means sending the file to an investor to do the underwriting. At this time, Plaintiff remained concerned because the loan application was going to be sent to the investor with undisclosed lease debt, which would still constitute fraud because Defendant originated the loan.

10. After receiving this notification, Plaintiff asked Wasieleski via email if Brad Langfus ("Langfus"), Operations Manager, approved of this new plan, with Orenge and Jim Steel ("Steel"), Sales Manager, carbon copied ("cc'ed"). Steel then asked Plaintiff if Langfus had to approve it. Plaintiff replied to Steel and Wasieleski, with Orenge and Langfus cc'ed and stated, "[t]his loan may not be brokered in order to eliminate the need for qualifying the borrower with his 2 rental leases. This is undisclosed debt and is not acceptable. That put[s] our company at risk as we are still originating the loan." Wasieleski was the only individual who replied to this last email. He explained that "[t]he reason [Orenge] is trying to broker is regarding avoiding to provide VOR [verification of rent], which I guess Plaza [investor] will not require." Wasieleski then indicated that he did not want to do anything not allowed and asked Plaintiff to speak with Langfus.

11. The next day, June 6, 2012, Plaintiff emailed Langfus and summarized her concerns. Plaintiff sent this email to Langfus and never received approval from him to forward it to other parties involved. In that email, Plaintiff said "[she] want[ed] nothing to do with blatant fraud." Plaintiff fully explained her position on receiving loans with undisclosed debt and closed by stating, "submitting loans with undisclosed debt is not acceptable and is fraudulent." Plaintiff

3

attached the original March file the borrowers submitted with the two rental properties for Langfus's review.

12. At the time Plaintiff denied the loan application and reported the attempt to get the loan approved with undisclosed debt, Plaintiff believed that conduct to be fraudulent and illegal. The Department of Housing and Urban Development ("HUD") and the Federal Housing Act ("FHA") federally insure Defendant's loans. Additionally, investors purchase loans from Defendant presuming that all loans are credit worthy, transferable, and free of any fraudulent activity that could cause any agency or investor to be at risk of default or foreclosure. In this case, undisclosed debt puts the borrowers at a much higher risk of default.

13. Further, Plaintiff was concerned that if Defendant were to approve the loan application and a federal investigator were to find out that the borrowers had undisclosed debt that Defendant knew or should have known about, Defendant would be liable for fraud and could potentially be barred from originating FHA loans. If discovered, investors would lose their confidence in Defendant, which could put them out of business. If Plaintiff had approved the loan, she could be blackballed from the industry. Additionally, Plaintiff would most likely lose her direct endorsement or "DE" certification from HUD, which would ban her from underwriting FHA loans.

14. On June 14, 2012, Plaintiff sent a lengthy email to Dar Medcalf ("Medcalf"), Human Resources Manager, Keith White ("White"), President, Langfus, and Kim Diericks ("Diericks"), Compliance Manager, detailing all that had happened, following a meeting with Medcalf.

15. Shortly after she sent that email, Langfus confronted Plaintiff and stated that she "had" to underwrite the Ongaki file and two other Orenge originated loans. Plaintiff repeated that she would not underwrite any loan applications with undisclosed debt and said that she

wanted nothing to do with the Ongaki file or other Orenge loans. Plaintiff articulated this to Langfus within an earshot of Debbie Wise ("Wise"), Chris Helgagdalen, and Kim Viercks whose cubicles are next to and/or near Plaintiff's. Langfus then raised his voice and demanded that Plaintiff have a co-worker do a subject quality control audit on the file. Plaintiff replied that a quality control audit would not help if the borrowers were purposely withholding debt. Plaintiff went on to state that if this was a problem, they should both discuss it with White and Medcalf. The confrontation concluded with Langfus storming off and Plaintiff in tears.

16. Medcalf addressed these concerns and stated that Plaintiff's decision to not underwrite files for certain people "has not been approved – the situation is under review by [Langfus]." Medcalf further stated that Langfus is her manager and asked her to underwrite a file, which "does not come in the form of harassment but in managing a department and appropriate turn in times."

17. The next day, June 15, 2012, Plaintiff was called into Langfus's office around 9:00 a.m. Medcalf was conferenced in via telephone with Mike Beerling, Controller, also present. Langfus then terminated Plaintiff because she wasn't "a good fit" anymore. Plaintiff was then asked to leave immediately and to come back to pick up her things at the end of the day, which she did.

## FAMILY AND MEDICAL LEAVE ACT ("FMLA") FACTS

18. Plaintiff went on FMLA leave on November 9, 2011 for back surgery. Plaintiff had a long and hard recovery but returned to work early on January 2, 2012 because of Defendant's workload.

19. Also on January 2nd, Plaintiff provided Defendant with a note from her physician dated December 21, 2011, which permitted her to work on January 9, 2012. The note also

5

indicated that she would be taking intermittent FMLA leave on an as needed basis for the next ten weeks.

20. Shortly after, it became apparent that Plaintiff was unable to work full days, as her recovery was more difficult than expected. After Plaintiff apprised Defendant of this, many co-workers began complaining to management about the workload created by her absence. Plaintiff was informed that her twelve weeks of annual FMLA leave apparently ran out on February 22, 2012. Plaintiff was still in need of time-off and was forced to utilize her earned personal time-off to recover. Wise then told Plaintiff to be careful taking time-off.

21. On June 7, 2012, Plaintiff informed Defendant that she was scheduled for breast reduction surgery on July 30, 2012 because of her back problems. Plaintiff did not receive a response from Defendant, confirming if her requested leave for the surgery was approved or denied.

22. Plaintiff believes that her FMLA leave was a motivating factor in her termination.

23. As a direct and proximate result of all of Defendant's illegal conduct, Plaintiff has suffered from distress, humiliation and embarrassment, loss of reputation, loss of enjoyment in life, loss of wages and benefits, and has incurred attorneys' fees and other expenses.

## CLAIMS

### COUNT ONE
### VIOLATIONS OF THE MINNESOTA WHISTLEBLOWER ACT

Plaintiff realleges each and every paragraph of this Complaint.

24. The Minnesota Whistleblower Act ("MWA") prohibits retaliation against employees for making good-faith reports of violations of law.

25. Minn. Stat. § 181.932,

Subd. 1 provides:

a. An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

   1. the employee ... in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;
   2. ......
   3. the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

26. Plaintiff reported what she reasonably and in good faith believed to be violations of state and federal law. She expressed concern about Defendant's legal liability for fraud numerous times in person and in writing to her supervisors who did nothing and even insisted that Plaintiff participate in fraud by underwriting the Ongaki loan.

27. Plaintiff refused to participate in any type of fraudulent activity.

28. The laws Plaintiff believed Defendant violated include, but are not limited to:

- Minn. Stat. § 332.56 (a credit service organization and its agents cannot advise a buyer to make any statement with respect to the buyer's credit worthiness that is untrue or misleading or that should be known by the exercise of reasonable care to be untrue or misleading);
- Minn. Stat. § 58.13 (no person acting as a mortgage originator shall make any false, deceptive, or misleading statements or representations regarding the borrower's ability to qualify for any mortgage product);
- Minn. Stat. § 58.161 (a mortgage broker shall act in the borrower's best interest and in the utmost good faith toward them and shall not compromise their rights or interests in favor of another, including the mortgage broker. Mortgage brokers will also disclose to borrowers all material facts of which they have knowledge that might reasonably affect the borrower's rights, interests, and/or ability to receive the borrower's intended benefit from the mortgage loan, but not facts which are reasonably susceptible to the knowledge of the borrower);
- 18 U.S.C. § 1010 (anyone who for the purpose of obtaining a loan from any entity with the intent that such loan shall be offered to or accepted by the Department of

Housing and Urban Development for mortgage insurance, makes any statement known to be false or willfully overvalues any security, asset, or income, shall be fined under this title or imprisoned not more than two years, or both), and;

- 18 U.S.C. § 1014 (anyone who knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the Federal Housing Administration, mortgage lending business, or any person or entity that makes in whole or in part a federally related mortgage loan upon any loan or application, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both).

29. Defendant retaliated against Plaintiff as a result of her reported objections by terminating her employment.

30. The adverse employment actions as alleged herein constitute violations of the MWA, Minn. Stat. § 181.931 *et seq.*

31. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee because of her refusal to engage in these actions.

32. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or with reckless indifference to the MWA, which protects Plaintiff.

33. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT TWO
## WRONGFUL DISCHARGE
## IN VIOLATION OF PUBLIC POLICY

Plaintiff realleges each and every paragraph of this Complaint.

34.     Minnesota common law recognizes a cause of action for an employee who refuses to work under conditions or refuses to perform actions that contravene public policy.

35.     Defendant, through its managers and officials acting on behalf of Defendant and within the scope of their employment, engaged in unlawful employment practices. These practices include, but are not limited to: terminating Plaintiff for her refusal to underwrite a loan with undisclosed debt and her reports of potential legal liability and fraud implications for Defendant if the loan were approved.

36.     The actions described above contravened public policy.

37.     The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee because of her refusal to engage in these actions.

38.     The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or reckless indifference to the laws, which protect Plaintiff.

39.     As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT THREE
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff realleges each and every paragraph of this Complaint.

40.     Defendant engaged in unlawful employment practices involving Plaintiff in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. These practices include,

but are not limited to: altering the terms and conditions of Plaintiff's employment after her FMLA leave, and; terminating Plaintiff's employment because of her previous and potential future FMLA leave.

41. Plaintiff was retaliated against in the terms, conditions, and privileges of her employment after she exercised her rights under the FMLA and informed Defendant of her future need for FMLA or similar leave.

42. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee because she exercised her rights under the FMLA.

43. The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to the laws, which protect Plaintiff.

44. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays:

a. That the practices of Defendant complained of herein be adjudged, decreed and declared to be in violation of the rights secured to Plaintiff by state, federal, and common law.

b. That Defendant be required to make Plaintiff whole for its adverse, retaliatory and unlawful actions through restitution in the form of back pay, with interest of an appropriate inflation factor.

c. That Plaintiff be awarded front pay and the monetary value of any employment benefits she would have been entitled to as an employee of Defendant.

d. That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein.

e. That Plaintiff be awarded compensatory damages in an amount to be determined at trial.

f. That Plaintiff be awarded punitive damages as permitted by statute.

g. That Plaintiff be awarded treble damages as permitted by statute.

h. That the Court award Plaintiff her attorneys' fees, costs and disbursements pursuant statute.

i. That the Court grant such other and further relief as it deems fair and equitable.


PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE TRIAL BY JURY IS AVAILABLE.


Dated this 8th day of August, 2012.          HALUNEN & ASSOCIATES

                                             _____
                                             Clayton D. Halunen, #219721
                                             Barbara J. Felt, #0228564
                                             Ross D. Stadheim, #0392475
                                             1650 IDS Center
                                             80 South Eighth Street
                                             Minneapolis, MN 55402
                                             Telephone: (612) 605-4098
                                             Facsimile: (612) 605-4099

                                             *ATTORNEYS FOR PLAINTIFF*

11

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated this 8th day of August, 2012.

_____
Ross D. Stadheim

| | |
|---|---|
| **STATE OF MINNESOTA** | **DISTRICT COURT** |
| **COUNTY OF HENNEPIN** | **FOURTH JUDICIAL DISTRICT** |

Kelly Larson,                                                                 Civil No.:

      Plaintiff,

vs.                                                                                    **AFFIDAVIT OF SERVICE**

Marketplace Home Mortgage, LLC,

      Defendant.

---

State of Minnesota   )
                             ) ss.
County of Hennepin  )

    Tara M. Ruedy, being first duly sworn on oath, deposes and says that on the 8th day of August, 2012, she served upon above-referenced Defendant one copy of Plaintiff's Complaint and Jury Demand, and Summons, via Hand Delivery to:

    Ms. Penelope J. Phillips
    Felhaber Larson Fenlon & Vogt
    220 South Sixth Street, Suite 2200
    Minneapolis, MN 55402

_/s/ Tara Ruedy_
Tara M. Ruedy

Subscribed and sworn to before me
this 8th day of August, 2012.

_/s/ Karl Breitbarth_
Notary Public

KARL D BREITBARTH
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 1/31/15